UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
CELLCO PARTNERSHIP d/b/a VERIZON            )
WIRELESS,                                   )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )
                                            )
TOWN OF SOUTHWICK,                          )
MASSACHUSETTS; MICHAEL DOHERTY,             )
MARCUS PHELPS, DAVID SUTTON, DAVID          )
SPINA, RICHARD UTZINGER, and JESSICA        )
THORNTON, in their capacity as Members of   )
the Planning Board of the Town of Southwick,)
Massachusetts                               )
                                            )
        Defendants.                         )
_____)


**COMPLAINT**

1.      This is an action for declaratory relief and mandamus brought pursuant to Section 332 of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332.  Section 332 precludes state and local governments from taking action that prohibits or has the effect of prohibiting the provision of personal wireless services and requires that any decision to deny applications to deploy personal wireless services facilities be based on substantial evidence in a written record. Here, the Southwick Planning Board ("Board") violated Section 332 by unlawfully denying an application by Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff" or "Verizon") for a special permit and site plan approval to authorize the construction and operation of a wireless communications facility in Southwick, Massachusetts ("Application").

21999588-v5

2. The proposed location of the Verizon facility is part of a parcel of land owned by the Town of Southwick ("Town") that is within the Town's Wireless Communications Services Overlay District ("Wireless Overlay"). The Town requires that any personal wireless facility that includes a cell tower be located on land in the Wireless Overlay. The Town specifically included this parcel in the Wireless Overlay, indicating that it considered the parcel well-suited for that use. The Town Meeting authorized the lease of the site for the installation of a cell tower by a wireless carrier. The Town then leased this site to Verizon explicitly for the purpose of constructing and operating a personal wireless service facility. Verizon then submitted the corresponding Application for a special permit and site plan approval so it could deploy the facility. The Application satisfied all of the applicable standards of the Zoning Bylaw of the Town of Southwick ("Zoning Bylaw"). Nevertheless, despite the Town having zoned the parcel specifically for wireless use, the vote of the Town Meeting authorizing its lease for wireless use, and the Town having actually solicited proposals to lease the parcel for wireless use and having entered into a lease with Verizon to use the parcel specifically for that purpose, the Town's Planning Board reversed course, without a legally sufficient basis, and denied the Application. The denial of the Application has the effect of prohibiting Verizon from providing adequate wireless service, as the new facility would help Verizon fill a substantial existing gap in coverage it experiences in the Town of Southwick. Defendants' unlawful acts entitle Verizon to an order compelling the Defendant Planning Board to act in accordance with its duties and grant the requested special permit and site plan approval.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the laws of the United States, specifically, 47 U.S.C.

§332(c)(7), which provides that "anyone adversely affected by any final action or failure to act by local government that is inconsistent with the limitations [of the TCA] may seek review in any court of competent jurisdiction and the court shall hear and decide such action on an expedited basis."

4. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and all events or omissions giving rise to this action occurred within this District.

**Parties**

5. Plaintiff Verizon is a general partnership organized under Delaware law, with its principal place of business at 180 Washington Valley Road, Bedminster, New Jersey.

6. Defendant Town of Southwick, Massachusetts is a Massachusetts municipal corporation with a principal address of 454 College Highway, Southwick, Massachusetts 01077 (the "Town" or "Southwick").

7. Defendant Michael Doherty, an individual who resides at 16 Lexington Circle, Southwick, Massachusetts, was, at all times material to this action, a member of the Board and is being named solely in that capacity.  Mr. Doherty resides in the neighborhood that borders the property.  Nonetheless, Mr. Doherty presided over the first three sessions of the hearing as chair of the Board before finally recusing himself on December 1, 2020.  Even though he was ostensibly recused, he improperly continued to participate in the hearing by commenting on the proposal that was the subject of the Application.

8. Defendant Marcus Phelps, an individual who resides at 28 Depot Street, Apartment 510, Southwick, Massachusetts, was, at all times material to this action, a member of

the Board, and is being named solely in that capacity.  Mr. Phelps served as the acting chair of the Board for its hearing on the Application on and after December 1, 2020.

9. Defendant David Sutton, an individual who resides at 207 Mort Vining Road, Southwick, Massachusetts, was, at all times material to this action, a member of the Board, and is being named solely in that capacity.

10. Defendant David Spina, an individual who resides at 7 Great Brook Drive, Southwick, Massachusetts, was, at all times material to this action, a member of the Board, and is being named solely in that capacity.

11. Defendant Richard Utzinger, an individual who resides at 146 South Loomis Street, Southwick, Massachusetts, was, at all times material to this action, a member of the Board, and is being named solely in that capacity.

12. Defendant Jessica Thornton, an individual who resides at 352 Granville Road, Southwick, Massachusetts, was, at all times material to this action, an associate member of the Board, and is being named solely in that capacity.

**Factual Background**

13. Verizon provides Personal Wireless Services ("PWS") as that term is defined in the TCA and is licensed by the Federal Communications Commission ("FCC") to provide service using various bands of the radio spectrum to an area that includes Southwick, Massachusetts.

14. Verizon's network functions by exchanging low power signals between the user's wireless device and a Verizon communications facility at a fixed location known as a PWS facility or a "cell site."  A cell site consists of one or more antennas and related radio and power equipment mounted on a building, tower, or other structure, a climate-controlled room fenced off

area, or other enclosure that houses other radio and power equipment, and related cabling.  Each cell site operates on one or more of the radio spectrum bands licensed to Verizon.

15. A cellular network like the one operated by Verizon is an interlinked system consisting of many individual cell sites, each serving a discrete geographic area or "cell."  The location of each cell site is selected with consideration for radio frequency ("RF") engineering principles and overall network design so that it will most effectively serve the targeted geographic area and also function properly with respect to existing and planned cell sites in the surrounding area.  In addition to questions of site availability and feasibility, there are a number of technical factors bearing on where to construct a cell site.  These include feasible antenna heights, population and service demands, topographical features, and the site's distance from and location with respect to other existing and proposed cell sites in the network.

16. Connections to wireless network infrastructure, and the telecommunications and ancillary services offered over them, are a critical means by which Americans engage with each other, reach 911 emergency services, and obtain broadband data access to the Internet and a multitude of smartphone applications.  In 2017, mobile wireless data usage per smartphone rose to an average of 5.1 GB per subscriber per month, an increase of over 30% from the prior year.  This upward trend is expected to continue and accelerate.  By 2024, mobile data traffic per smartphone in North America is expected to increase more than five-fold, from 7 GB per month in 2018 to 39 GB per month in 2024.  Furthermore, households are increasingly reliant on wireless telephone service.  In the first six months of 2019, 59.2% of adults and 70.5% of children in the United States lived in households that did not have a landline telephone, but did have at least one wireless telephone.  In 2018, 61.8% of Massachusetts households relied either exclusively or mostly on wireless for their telephone service.

17. Consumers everywhere increasingly rely on wireless network infrastructure, and this increased demand for reliable service makes it necessary for providers like Verizon to increase network capacity and capabilities to meet the rising demand.

18. Employing RF engineering principles, Verizon's RF engineers determined that Verizon requires a cell site in in the southeast part of Southwick.  This cell site is needed to fill a significant gap in signal coverage in the Verizon network that now exists.  The gap exists in part because as demand for wireless services has grown, the existing surrounding facilities in the Verizon network are increasingly unable to meet the demand for wireless service resulting in dropped calls and deteriorated service in the area of the significant gap.  The proposed cell site would address this inadequate service and enable Verizon to provide service, including 4GLTE wireless voice and data transmission, to Verizon customers who live and work in and travel through this area.  Without a facility in this area, Verizon customers are unable to reliably and consistently initiate, receive, or hold calls and data transmissions when located within or traveling through this area of Southwick.

19. Whenever possible, Verizon installs its cell sites on an existing tower or other available structure that is tall enough and suitably located so that it can provide the service needed to fill a coverage gap.  There are no existing structures that Verizon can use for the installation of a cell site to address its service needs in the targeted area of Southwick.

20. Pursuant to a vote of its Town Meeting and after a public bidding process, the Town agreed to lease to Verizon an area within a town-owned parcel of land off Liberty Lane in Southwick, identified as Lots 31 and 32 on Southwick Assessor's Map No. 92 (the "Property").  The Property is located in a Residential 20 Zone (R-20) and is also located in the Wireless Communications Services Overlay District ("Wireless Overlay").

21. Article IV, Section 185-23.1 of the Zoning Bylaw requires a special permit from the Board to construct a "major" wireless communications facility, which is defined to include any wireless communications facility involving a tower. A major wireless communications facility may only be approved if the site is located within the Town's Wireless Overlay.

22. The Property is the only location within the Town's Wireless Overlay that is available for Verizon to lease where it is possible to site a tower that is capable of alleviating the Verizon coverage gap on a lot that is large enough to satisfy the large setback requirements of the Zoning Bylaw that apply to a wireless communications tower.

23. Verizon has leased from the Town a 100' by 100' area of the Property, with rights to access and utilities. Verizon proposes to erect a "monopine" tower (a monopole tower camouflaged to resemble a pine tree) with attached antennas and associated radio and related equipment on and adjacent to the tower. The tower would be 120 feet above ground level (a.g.l.) and the antennas would extend to approximately 124 feet a.g.l. The tower and equipment will be surrounded by a 9-foot chain link fence. Access and utilities would be run along an easement to Liberty Lane, all as shown on the plans filed with the Board as part of the Application (collectively the "Proposed Facility").

24. The Proposed Facility would be a personal wireless services facility within the meaning of the TCA.

25. On April 9, 2020, Verizon filed the Application seeking approval of a special permit for a major Wireless Communications Facility under Section 185-23(D)(1) of the Zoning Bylaw, along with supporting material satisfying the content requirements of the Zoning Bylaw. The Application is a request to construct a PWS Facility and the Town's review therefore is subject to the TCA.

26. The Board opened its hearing on the Application on September 22, 2020. The Board continued the hearing to October 6, 2020, and then further continued it to October 20, 2020, November 10, 2020, December 1, 2020, December 15, 2020, and January 5, 2021. The hearing closed on January 5, 2021.

27. Verizon supplemented its Application six times throughout the hearing process by submitting additional information and documentation in response to questions and concerns raised by the Board. Verizon also conducted balloon tests on December 12 and 18, 2020, and prepared a study showing the extent to which the tower would be visible at various locations in the surrounding neighborhood and elsewhere in the Town.

28. The information submitted by Verizon to the Board, as supported by the testimony at the hearing, establishes that the Proposed Facility meets all of the standards for approval under the Zoning Bylaw. There is no information in the record that would support a denial of the Application based on a reasonable and lawful evaluation of the evidence.

29. On January 19, 2021, the Board voted to deny the Application for a special permit and Verizon's request for site plan approval without making any findings. The Board's written decision documenting the denial ("Decision") was discussed and approved at the Board's February 9, 2021 meeting and filed with the Town Clerk on February 10, 2021. A true and correct copy of the Decision is attached to this Complaint as Exhibit 1. The grounds stated for denial in the Decision are not based on the evidence in the record and are not correct or sufficient as a matter of law to support the decision to deny the Application.

30. The TCA requires that any decision by a state or local government or instrumentality to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by *substantial evidence contained in a written record.*

8

47 U.S.C. §332(c)(7)(B)(iii) (emphasis added).  Here, the Board's Decision denying the Application was not supported by substantial evidence in the written record.

31. The Decision ignores the overwhelming weight of the competent and legally cognizable evidence in the record.

32. For example, the Decision states as a purported basis for denying the Application that the Proposed Facility is not suitable for or compatible with the character and scale of a "densely developed residential neighborhood" even though the proposed Wireless Facility would be located at least 433 feet from the lot line of any property in residential use and surrounded by hundreds of feet of thickly wooded area containing mature trees on all sides.

33. For example, the Decision purports to find that the "potential outcome of personal injury or death" from tower collapse, fire or falling ice and debris is "significant and increased in this location" even though there was no evidence that the risk from those factors was significant or that the risk would be increased at the Proposed Facility location.  To the contrary, Verizon presented evidence that the tower will comply with all applicable safety and code standards for such structures and be designed so that in the unlikely event of a failure it would collapse on itself within the surrounding fenced compound.  Verizon explained that the danger of ice falling in a publicly accessible area would be highly unlikely because of the buffer formed by the surrounding tree canopy.

34. For example, the Decision purports to find that the Proposed Facility is a "nuisance" because of the visibility of the tower from residential properties and from a particular intersection of two streets.  However, the evidence presented to the Board showed that the tower would be camouflaged as a pine tree, would be surrounded by hundreds of feet of woods in all

9

directions, and would not be more than minimally visible, at a distance and surrounded by tree canopy, from any location.

35. For example, the Decision purports to find that the Proposed Facility "will require significant deforestation and destruction of a long-established forest and trails." However, the evidence Verizon presented to the Board shows that any proposed tree clearing is limited to the immediate area of the Proposed Facility, including the access and utility easement area, and that the Proposed Facility has been designed so that it does not interfere with any existing trails. The evidence provided to the Board also included a statement by a tree expert that the cutting of saplings and mature trees within the area leased for the Proposed Facility, including the access and utility easement area, "will have a negligible effect on the rest of the forest."

36. In these and all of the other negative findings in the Decision, the Board relies on speculation, specious reasoning, and mischaracterization of the evidence in a disingenuous effort to justify the denial of the Application in order to appease "Not In My Back Yard" neighborhood opposition. Indeed, the Board's vote to deny the Application was taken before the Board had discussed or voted on any findings. The Board did not discuss or adopt its purported findings until a subsequent meeting.

37. Verizon demonstrated that the Proposed Facility would be minimally intrusive, is necessary to fill a substantial gap in service, and satisfies all applicable standards under the Zoning Bylaw, including the special permit criteria of Chapter 185-9(A)(1)-(17) of the Bylaw, the site plan standards set forth in Chapter 185-10, and the Wireless Overlay District criteria set forth in Chapter 185-23.1.

38. Verizon is a personal wireless service provider as described in the TCA, is licensed by the FCC, and is entitled to the protections of the TCA. The Application for a special

permit to construct the Proposed Facility is a request to construct a PWS facility and is therefore subject to the TCA.

## COUNT I
**(Violation of TCA Because Denials Not Supported by Substantial Evidence)**

39. Plaintiff's allegations contained in paragraphs 1 through 38 above are incorporated by reference as if fully set forth herein.

40. The TCA requires that decisions to deny a request to "place, construct or modify" a personal wireless services facility, "be supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

41. There is no substantial evidence in a written record to support the Board's denial of the Application.

42. The Application and supporting information that Verizon presented to the Board in support of the Application demonstrates conclusively that the Proposed Facility satisfies all of the design standards and other objective requirements of the Bylaws.

43. The Board's failure to support its denial of the Application by "substantial evidence contained in a written record" is a violation of 47 U.S.C. §332 (c)(7)(B).

44. The TCA vests this Court with authority to grant mandamus relief if such relief would be warranted under the circumstances.

45. Verizon is entitled to a declaration that the Board's failure to base its denial of the Application on substantial evidence in a written record violates the TCA. Verizon is also entitled to an order directing the Board to approve the Application.

## COUNT II
### (Violation of TCA for Prohibition of Wireless Services)

46. Plaintiff's allegations contained in paragraphs 1 through 45 above are incorporated by reference as if fully set forth herein.

47. 47 U.S.C. §332(c)(7)(B)(i)(II) states that the regulation of personal wireless service facilities by states or their instrumentalities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

48. Verizon currently experiences a substantial gap in its wireless service in the area of the Proposed Facility and nearby parts of Southwick. The Proposed Facility at the Property would allow Verizon to provide reliable service within that gap and is necessary to fill that gap.

49. In its written materials and through testimony at the hearing, Verizon presented an extensive alternative site analysis to the Board showing that there were no feasible alternatives to the Proposed Facility that would allow it to provide service to the area that now experiences inadequate and unreliable service.

50. Through its Zoning Bylaw, the Town requires a special permit with site plan approval from the Board for the construction of wireless communications facilities. The Decision by the Board denying the Application prevents Verizon from constructing the Proposed Facility at the only available and feasible location, and therefore has the effect of prohibiting Verizon from providing its personal wireless services within the area experiencing a significant gap in wireless service. Accordingly, the Decision effectively prohibits wireless services in violation of 47 U.S.C. §332(c)(7)(B)(i)(II).

51. In light of the foregoing, Verizon is entitled to a declaration that the Defendants' denial of the Application violates the TCA and is further entitled to an order directing the Board to grant the special permit and site plan approval.

**WHEREFORE**, Plaintiff Cellco Partnership d/b/a Verizon Wireless respectfully requests the following relief:

1. An expedited review of the matters set forth in this Complaint, as provided by the Telecommunications Act of 1996, Pub. L. 104-104, § 704, 110 Stat. 56, codified at 47 U.S.C. § 332(c).

2. A declaration that the Board's denial of the Application violated the Telecommunications Act of 1996, 47 U.S.C. § 332(c)

3. An order annulling the Board's denial of the Application.

4. An order of mandamus directing the Board to issue the necessary approval to allow Verizon to install, operate, and maintain the Proposed Facility.

5. Such further relief as the Court may deem appropriate and proper.

> **PLAINTIFF,**
> **CELLCO PARTNERSHIP d/b/a**
> **VERIZON WIRELESS,**
> By its attorneys,
>
>
> /s/ Michael S. Giaimo
> Michael S. Giaimo (BBO #552545)
> mgiaimo@rc.com
>
>
> /s/ Danielle Andrews Long
> Danielle Andrews Long (BBO #646981)
> dlong@rc.com
> Robinson & Cole LLP
> One Boston Place, Floor 25
> Boston, MA  02108-4404
> (617) 557-5900

Dated:  March 10, 2021